UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICHARD R.,[1]

                                    Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of the Social Security
Administration,

                                    Defendant.

Case No.:  25cv894-CAB(LR)

**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW**

**[ECF No. 14]**

This Report and Recommendation is submitted to the Honorable Cathy A. Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On April 15, 2025, Plaintiff Richard R. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits and supplemental security income benefits.  (Compl., ECF No. 1.)

---

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

1

25cv894-CAB(LR)

Now pending before the Court is the parties' "Joint Motion for Judicial Review." (See J. Mot. Judicial Review, ECF No. 14 ("J. Mot.").)  For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL BACKGROUND

On March 2, 2023, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II and Title XVIII of the Social Security Act, alleging disability beginning on March 2, 2023.  (ECF No. 8 ("AR")[2] at 70, 79, 91, 212, 220.)  After his application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (Id. at 112, 127–29.)  Plaintiff appeared at the administrative hearing with counsel on June 25, 2024.  (Id. at 16–35.)  The ALJ postponed the administrative hearing to further develop the record regarding Plaintiff's mental impairments.  (Id. at 28–29.)  On November 7, 2024, a supplemental administrative hearing was held.  (Id. at 36–69.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from Plaintiff, a medical expert ("ME"), and a vocational expert ("VE").  (Id.)

On December 30, 2024, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 2, 2023, through the date of the decision.  (Id. at 105.)  The ALJ's decision became the final decision of the Commissioner on March 10, 2025, when the appeals council denied Plaintiff's request for review.  (Id. at 8–13.)  This timely civil action followed.  (See ECF No. 1.)

/ / /

/ / /

/ / /

---

[2] "AR" refers to the Administrative Record filed on June 16, 2025.  (ECF No. 8.)  The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

25cv894-CAB(LR)

## II.  SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 2, 2023.  (AR at 94.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "bilateral patellofemoral pain syndrome; degenerative joint disease/osteoarthritis of the bilateral wrists and hands and/or bilateral carpal tunnel syndrome; urinary tract disorder with urinary incontinence; and obstructive sleep apnea with insomnia." (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 99.)  Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except for the following: he can do no climbing of ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he can frequently handle, finger and feel bilaterally; he must avoid concentrated exposure to hazards (such as work around dangerous moving machinery and work at unprotected heights); and he needs easy access to a restroom.

(Id. at 99)

At step four, the ALJ found that Plaintiff could perform his past work as a clergy member.  (Id. at 104.)  The ALJ then found that Plaintiff was not disabled from March 2, 2023, through the date of the ALJ's decision.  (Id. at 105.)

## III.  DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as the grounds for reversal and remand: (1) whether the ALJ addressed Plaintiff's urinary frequency in the RFC; (2) whether the ALJ addressed Plaintiff's post-traumatic stress disorder ("PTSD"); and (3) whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.  (J. Mot. at 2–3.)

25cv894-CAB(LR)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

## V.  RELEVANT MEDICAL RECORDS AND TESTIMONY

### A.    Treatment Records

#### 1. Urology

In 2022, Plaintiff sought treatment for urinary urgency and related symptoms.  (AR at 481.)  On May 24, 2022, Plaintiff reported to Urology for medication management, where Pharmacist Olivia Nguyen noted mild improvement with daily Darifenacin.  (Id.)  Plaintiff reported use of liners and super pads during travel because of his urinary "leakage."  (Id.)  On August 30, 2022, Plaintiff saw Dr. Nguyen and reported that Darifenacin was effective and that he no longer experienced daytime urgency.  (Id. at

4

456.)  On November 15, 2022, Dr. Tekisha Linder noted Plaintiff had worsening urgency, urge urinary incontinence ("UUI"), and urinary frequency every thirty to sixty minutes. (Id. at 445.)  Dr. Linder increased Plaintiff's Darifenacin dosage and advised reducing caffeine.  (Id. at 446.)  On December 9, 2022, Plaintiff reported to Dr. Linder that his symptoms persisted, including frequent urination and leakage that required pads.  (Id. at 440–41.)

On March 6, 2023, Plaintiff reported urgency, frequency, and UUI that required pads.  (Id. at 411–12, 516.)  Dr. Paul Lui noted that Darifenacin's effects had plateaued and approved a trial of Mirabegron.  (Id.)  On July 13, 2023, Plaintiff followed up with Dr. Linder and reported improved symptom control with the combination of Mirabegron and Darifenacin.  (Id. at 572.)

On January 18, 2024, Plaintiff saw Dr. Linder and reported that his symptoms were well controlled with Mirabegron.  (Id. at 719–20.)  On February 15, 2024, Plaintiff requested additional incontinence supplies from Pharmacist Lena Te due to leakage during long travel.  (Id. at 712.)  On May 14, 2024, Plaintiff was evaluated by Nurse Practitioner ("N.P.") Neander Tabingo.  (Id. at 658–59.)  Plaintiff reported waking up five to seven times per night and urinating as often as every fifteen to twenty minutes during the day.  (Id. at 658.)   He attributed some symptoms to increased fluid and caffeine intake.  (Id.)  N.P. Tabingo noted that Plaintiff's urge incontinence had improved, but his urgency and frequency remained bothersome.  (Id. at 659.)  On August 9, 2024, Plaintiff followed up with N.P. Tabingo and reported improvement with Mirabegron, with urinary intervals increasing to about one hour.  (Id. at 780.)  N.P. Tabingo advised that Plaintiff continue taking the medication.  (Id. at 781.)

### 2. Mental examinations

On February 15, 2023, Plaintiff underwent a mental health evaluation with Dr. Kerianne Kramer and reported that his excessive workload caused insomnia and anxiety. (Id. at 419.)  He stated that his stress began in 2017 due to commuting between Loma Linda and San Diego and explained that "the stories people tell [him] are a lot to take

5

on." (Id. at 420.)  Plaintiff also reported using a continuous positive airway pressure ("CPAP") machine, waking up four to five times nightly to use the restroom, and having trouble returning to sleep due to racing thoughts.  (Id.)  Dr. Kramer created a treatment plan that included psychotherapy and telephonic check-ins.  (Id. at 421.)  On March 3, 2023, Plaintiff attended a follow-up individual therapy session with Dr. Kramer.  (Id. at 413.)  Despite the medication providing some relief, Plaintiff reported ongoing insomnia and stated that he lacked energy to engage in pleasurable activities.  (Id.)

On March 9, 2023, Dr. Cory Kowalski, a licensed psychologist, treated Plaintiff for an unspecified stress and anxiety disorder.  (Id. at 409–10.)  Plaintiff reported ongoing stress from racial trauma he experienced at work and during his military service, and shared that he was facing retirement due to continued workplace trauma.  (Id. at 409.)  On March 16 and March 24, 2023, during follow-up psychotherapy appointments, Plaintiff stated that he was preparing for retirement and focusing on self-care to support his mental and emotional well-being.  (Id. at 407–08.)  Dr. Kowalski recommended continuing individual psychotherapy and noted that Plaintiff's thoughts were logical and goal-directed, with no evidence of a gross thought disorder.  (Id.)  On March 30, 2023, Plaintiff continued therapy with Dr. Kowalski, who noted that Plaintiff was actively engaged in the session and had a good response to intervention.  (Id. at 404–05.)  On April 6, 2023, Dr. Kowalski treated Plaintiff for a follow-up psychotherapy appointment for increased anxiety and sadness.  (Id. at 403.)  Plaintiff denied any suicidal or homicidal thoughts, and Dr. Kowalski observed that he was friendly, logical, and goal-oriented. (Id.)  On April 19, 2023, Plaintiff attended another follow-up psychotherapy session with Dr. Kowalski, who advised Plaintiff to continue psychotherapy as needed.  (Id. at 594.)

On April 3, 2024, Plaintiff received treatment from pharmacist Lena Te.  (Id. at 695.)  Dr. Te noted that Plaintiff experienced insomnia related to PTSD and anxiety and had difficulty managing sleep, but he was tolerating his current medication.  (Id. at 695–97.)

25cv894-CAB(LR)

On April 17, 2024, Plaintiff underwent an e-consultation with Dr. Merle Madera for depression and anxiety, and Dr. Madera diagnosed Plaintiff with PTSD and chronic insomnia.  (Id. at 677.)  On May 3, 2024, Plaintiff underwent a psychiatric evaluation with Dr. Madera and attributed his PTSD to exposure to injured service members and alleged mistreatment by his Navy superiors.  (Id. at 673–74.)  He reported that his sleep medication provided some benefit but that he continued to have difficulty falling and staying asleep, which he partly attributed to his enlarged prostate.  (Id. at 674.)  Dr. Madera noted that Plaintiff reported feeling well and not depressed, explained that medication would not resolve nocturia caused by his structural prostate condition, discontinued Hydroxyzine, and prescribed Melatonin.  (Id. at 675–76.)  At a follow-up appointment with Dr. Madera on August 15, 2024, Plaintiff reported that he was "doing great," that Melatonin was initially ineffective but later helpful, and that although he continued to wake up at night, he was able to return to sleep after reading or watching videos and was getting adequate rest while focusing on self-care.  (Id. at 776, 778.)  Plaintiff also reported ongoing incontinence and declined physician-recommended surgery due to potential complications.  (Id. at 778.)  Dr. Madera opined that Plaintiff is "doing great" and advised him to continue taking Melatonin.  (Id. at 779.)

On November 22, 2024, Plaintiff underwent a psychological examination with Dr. Robert Obrecht.  (Id. at 816–24.)  Dr. Obrecht noted Plaintiff's history of overactive bladder, enlarged prostate, sleep apnea, and mental health conditions, including depression, anxiety, insomnia, and stress-related trauma from Navy service.  (Id. at 817.)  After reviewing the medical records, Dr. Obrecht observed Plaintiff with unspecified trauma and stressor-related disorder, unspecified depressive disorder, and unspecified anxiety disorder related to noncombat experiences during the Persian Gulf War.  (Id. at 817, 819.)  Plaintiff reported that he watches television, washes dishes, cleans the house, and uses a cell phone, but he needs assistance with chores and meal preparation.  (Id. at 818.)  Plaintiff also drives his car and manages his finances.  (Id.)  Plaintiff described himself as depressed, and Dr. Obrecht observed a congruent mood.  (Id.)  Dr. Obrecht

25cv894-CAB(LR)

assessed Plaintiff's memory, reasoning, and comprehension as average. (Id. at 819.) He further concluded that Plaintiff has minimal limitations in attention, following instructions, handling work-related stress, social interaction, and activities of daily living. (Id. at 820.) Finally, in a mental residual functional capacity questionnaire, Dr. Obrecht opined that Plaintiff's impairments do not affect his ability to understand, remember, and carry out instructions, interact with coworkers, or respond to workplace changes. (Id. at 821–23.)

### 3. Other examinations

On May 17, 2022, Plaintiff completed a sleep PAP therapy follow-up with respiratory therapist Rachael St. Laurent, who reported good compliance and an Apnea-Hypopnea Index within the normal range. (Id. at 484–85.) On September 26, 2022, Dr. Robert Houghton conducted a physical examination, during which Plaintiff reported a mental decline related to work, increased anxiety and insomnia observed by his wife, and the need to plan for restroom access when traveling. (Id. at 374.) On April 17, 2024, Plaintiff saw primary care physician Dr. Conny Tirtaman, who noted ongoing incontinence, restricted Plaintiff's fluid intake to approximately one and a half bottles of water per day, and noted that Plaintiff started Finasteride to "shrink the prostate." (Id. at 686, 688.)

### B. Plaintiff's Testimony During Administrative Hearing

On November 7, 2024, Plaintiff testified that he served in the Navy for twenty-eight years and then worked as a chaplain for the Department of Veterans Affairs ("VA") for ten years. (Id. at 43–44.) He stated that he receives retirement benefits from the military, the VA, and an early retirement plan, but not from Social Security. (Id. at 44–45.) Plaintiff testified that he held only one job as a VA chaplain in the past five years. (Id. at 46.)

Plaintiff testified that he left his position at the VA because he was unable to maintain a 160-mile daily commute between San Diego and Loma Linda due to his medical condition. (Id. at 30, 47.) He stated that he would have considered transferring

to a VA facility in San Diego if a position had been available, but he was unsure whether he could have continued working due to his urinary and PTSD-related conditions. (Id. at 47.)

Plaintiff further testified that he reported to his mental health provider that he was doing well and that his medication was effective. (Id. at 48.) He stated that he was taking Melatonin and Gabapentin for sleep and mental health issues at the time of the hearing. (Id. at 49.) He also testified that he uses a CPAP machine every night. (Id. at 51.) Plaintiff stated that he does not attend group therapy for PTSD, but instead receives community care and therapy outside the VA. (Id. at 52.)

Plaintiff also reported that he experiences dehydration because he limits his water intake due to frequent urination associated with prostate and bladder problems. (Id. at 66.) He testified that he drinks approximately two and a half bottles of water per day, which causes him to urinate every ten to fifteen minutes. (Id.) Plaintiff further testified that he experienced urinary accidents during the hearing and that, without wearing pads, he would be "in big trouble." (Id. at 67.) He stated that even with padding, he was soaking through his clothing and wetting the chair. (Id.)

## VI. DISCUSSION

**A.    The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

**1. Parties' arguments**

Plaintiff summarily argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. (J. Mot. at 17.) Plaintiff contends that the ALJ did not cite evidence discounting his statements, making it "impossible to determine what the ALJ was thinking." (Id.) Plaintiff therefore asserts

/ / /

/ / /

/ / /

/ / /

/ / /

25cv894-CAB(LR)

that the ALJ failed to provide clear and convincing reasons to disregard his alleged impairments.  (Id. at 18.)[3]

Defendant responds that the ALJ properly discounted Plaintiff's symptom allegations by summarizing Plaintiff's allegations and identifying inconsistencies with medical and other record evidence, supported by specific citations to the record.  (Id. at 18.)  Defendant argues that the ALJ reasonably found Plaintiff's urinary incontinence inconsistent with reports that medication and treatment effectively controlled his symptoms.  (Id. at 19.)  Defendant further asserts that the ALJ noted Plaintiff's repeated refusal of recommended treatment and found his allegations inconsistent with his reported daily activities, including an active lifestyle despite claims of frequent bathroom use.  (Id. at 19–20.)  Accordingly, Defendant contends that the ALJ provided clear and convincing reasons and that the decision should be affirmed.  (Id. at 21.)

### 2.  Applicable law

The Ninth Circuit has established a two-part test for evaluating a claimant's allegations regarding subjective symptoms.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017); see also Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged."  Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  Second, if a claimant presented such evidence, and there is no evidence of malingering, the ALJ may reject the claimant's statements about the severity of the claimant's symptoms "only by offering specific, clear and convincing reasons for doing so."  Id.

---

[3] In the Scheduling Order for Joint Motion, the Court provided detailed instructions governing the parties' submissions.  (See ECF No. 9 at 4–6.)  The Court specifically ordered Plaintiff to "concisely set forth plaintiff's contentions (including citations to the page(s) of the administrative record recited evidence is found, complete citations to relevant legal authority, and definitions of medical terminology.)"  (Id. at 5.)  Despite the Court's direction, Plaintiff submitted an underdeveloped, four-sentence argument that lacks meaningful analysis.  (J. Mot. at 17–18.)

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Id. at 489. Instead, the ALJ must identify the testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain what evidence undermines the claimant's testimony. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony, and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity" of her symptoms); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029. In addition, the ALJ may consider other factors, such as the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029.

### 3. Analysis

The ALJ found—and neither party contests—that Plaintiff has the following severe impairments: "bilateral patellofemoral pain syndrome; degenerative joint

25cv894-CAB(LR)

disease/osteoarthritis of the bilateral wrists and hands and/or bilateral carpal tunnel syndrome; urinary tract disorder with urinary incontinence; and obstructive sleep apnea with insomnia." (AR at 94 (citing 20 C.F.R. § 404.1520(c)).)

The parties do not dispute the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR at 100; see also J. Mot.) Accordingly, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.

Turning to the second prong of the ALJ's inquiry, neither party alleges that the ALJ found that Plaintiff was malingering. (See J. Mot.) The Court therefore is required to determine whether the ALJ identified which of Plaintiff's subjective allegations of impairment he discounted, and whether the ALJ provided specific, clear, and convincing reasons for doing so. See Brown-Hunter, 806 F.3d at 489; Lambert, 980 F.3d at 1277.

The ALJ summarized Plaintiff's testimony as follows:

> The claimant has alleged disability due to stress; bladder issues (urinary incontinence) and enlarged prostate; hypertension; insomnia; vision loss; sleep apnea; carpal tunnel syndrome; back pain; shoulder pain; knee pain; PTSD; anxiety; and mental problems. At the supplemental hearing, he emphasized that his primary issue that prevented him from working was his urinary incontinence; he needs to go to the bathroom frequently. He also testified that he does not have good sleep due to PTSD, sleep apnea, and TMJ.

(AR at 100)

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record[.]" (Id. at 100.) The ALJ then discounted Plaintiff's subjective symptom testimony, citing the following reasons: (1) Plaintiff's reports about his symptoms were inconsistent with the effectiveness of treatment; and (2) Plaintiff's claims were inconsistent with his daily activities. (See id. at 100–02.)

25cv894-CAB(LR)

As an initial matter, Plaintiff advances only a cursory, four-sentence argument in support of his claim. (J. Mot. at 17–18.) Plaintiff does not identify which part of his symptom testimony the ALJ improperly rejected or provide any meaningful analysis. (See id.) The Court cannot manufacture arguments for Plaintiff. See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929–30 (9th Cir. 2003) (holding that the court "cannot manufacture arguments for an appellant" and requiring that "contentions [ ] be accompanied by reasons"); see also Souzan H. v. O'Malley, No. 3:23-CV-00031-VET, 2024 WL 4307199, at *7 (S.D. Cal. Sept. 26, 2024). And "[a] general allegation that the ALJ committed legal error, or that the ALJ's determination is not supported by substantial evidence, is simply not enough." Behrooz Abdul K. v. Comm'r of Soc. Sec., Case No. 1:22-cv-00511-AKB-REP, 2024 WL 1090300, at *2 (D. Idaho Mar. 13, 2024) (citing Indep. Towers of Wash., 350 F.3d at 929).) Plaintiff identifies no specific testimony that the ALJ improperly rejected and instead asserts only that the ALJ failed to cite the record. (J. Mot. at 17–18.) Because Plaintiff's argument is underdeveloped, the Court could affirm the ALJ's decision on this basis alone. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (noting that the court declined to address the ALJ's reason for rejecting claimant's symptom testimony because claimant failed to argue the issue with specificity in the briefing). Nevertheless, Plaintiff's case should not be prejudiced by his counsel's inadequate briefing. See Julie R. M. v. Kijakazi, No. 20CV1608-GPC-MDD, 2021 WL 4993034, at *3 (S.D. Cal. Oct. 26, 2021) (discussing plaintiff's raised disputed issues despite counsel's incoherent arguments).

Despite these deficiencies, the Court considers Plaintiff's arguments to the extent possible and based on the reasoning the ALJ provided in his decision. See Revels, 874 F.3d at 654 (stating that a court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or

///

///

///

13

25cv894-CAB(LR)

she] did not rely"); Garrison, 759 F.3d at 1010 (same). Accordingly, the Court examines the validity of the ALJ's stated reasons for discounting Plaintiff's testimony.[4]

### a. Improvement of symptoms with treatment

The ALJ discounted Plaintiff's subjective symptom testimony because his statements regarding the intensity, persistence, and limiting effects of the symptoms were inconsistent with the medical evidence. (AR at 100.) The ALJ explained that Plaintiff's "course of treatment and alleged symptoms . . . support the existence of some limitations as set forth in the residual functional capacity, but do not correlate with greater restrictions as alleged by [Plaintiff]." (Id. at 101.) In assessing a claimant's subjective symptoms, an ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication taken to alleviate pain," as well as "[t]reatment, other than medication" the claimant receives or has received to relieve "pain or other symptoms." See 20 C.F.R. § 404.1529(c)(3)(iv)–(v); see also Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (stating that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Plaintiff contends that the ALJ failed to cite supporting evidence to reject his symptom statements. (J. Mot. at 17.) The record shows otherwise. (See AR at 99–103.) At the November 7, 2024, administrative hearing, Plaintiff testified that urinary incontinence—requiring frequent bathroom use—prevented him from working. (Id. at 47.) Plaintiff stated that even when he limits his water intake to two bottles per day, he uses the bathroom every ten to fifteen minutes. (Id. at 66.) The ALJ found that Plaintiff's "allegations of urinary symptoms and associated limitations are somewhat

---

[4] Given Plaintiff's underdeveloped argument in section D.iii.4.a of the Joint Motion, the Court addresses both Plaintiff's urinary and sleep symptom allegations. (See J. Mot. at 17–18.)

supported by the record, but the evidence does not substantiate restrictions more limited than the ability to do less than light work as set forth in the residual functional capacity." (Id. at 100.)  The ALJ cited treatment records documenting Plaintiff's history of urinary frequency, beginning with a September 2022 record noting that Plaintiff used the restroom frequently.  (Id. at 101 (citing id. at 616).)  In November 2022, Plaintiff reported that Darifenacin controlled his symptoms, but he continued to have urinary urgency, daytime frequency every thirty to sixty minutes, and used incontinence pads.  (Id. at 101 (citing id. at 445).)  In February 2023, Plaintiff reported "getting up 4-5 times a night to use the restroom."  (Id. at 101 (citing id. at 420).)  The ALJ noted that although Plaintiff reported no improvement with Darifenacin alone in March 2023, he later reported in July 2023 that his symptoms improved when he took both Mirabegron and Darifenacin.  (Id. at 101 (citing id. at 572).)  The ALJ also cited records from May and August 2024 showing continued nighttime urination and incontinence.  (Id. at 101 (citing id. at 658, 778, 780).)  The ALJ reasonably found this course of treatment consistent with limiting Plaintiff to light work with ready access to a restroom rather than Plaintiff's alleged inability to perform work.  (Id. at 101.)

Plaintiff also testified that his inability "to get good sleep" due to his sleep apnea and PTSD precluded him from working.  (Id. at 47–48.)  The ALJ found that Plaintiff's "allegations of obstructive sleep apnea ("OSA") and associated limitations are somewhat supported by the record, but the evidence does not substantiate restrictions more limited . . . than light work."  (Id. at 101.)  In reaching this determination, the ALJ reviewed Plaintiff's treatment for OSA and observed that medical records reflect no reported sleep problems while Plaintiff was using his CPAP machine.  (Id. (citing id. at 438 (noting that

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiff uses his CPAP daily, and his Apnea-Hypopnea Index ("AHI") with CPAP is 3.1[5])).)  The ALJ also cited records demonstrating that Plaintiff's insomnia improved significantly with Melatonin.  (Id. at 102 (citing id. at 778).)  In August 2024, Plaintiff reported that Melatonin started working, he was "doing great," and he was "able to get rest."  (Id.)  Additionally, during the hearing, the ALJ questioned Plaintiff about his prior statement to a medical provider that "[t]he melatonin and the CPAP are working terrific."  (Id. at 48.)  Plaintiff acknowledged making the statement, which the ALJ found inconsistent with Plaintiff's testimony that his OSA precluded work.  (Id.)  The ALJ reasonably concluded that, "although Plaintiff has been prescribed and taken appropriate medications for the alleged impairments . . . the objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms."  (Id. at 102.)  More importantly, Plaintiff has not reported any side effects.  (Id.)

Accordingly, the ALJ identified Plaintiff's symptom statements and cited specific medical records documenting Plaintiff's improvement of his symptoms with treatment.  (Id. at 99–103.)  Notably, apart from Plaintiff's cursory contention that the ALJ did not provide sufficient citations for discounting his symptom testimony, Plaintiff does not challenge any of the reasoning above.  Yvonne W. v. Kijakazi, No. 22cv390-BEN(LR), 2023 WL 4745108, at *13 (S.D. Cal. July 25, 2023) (holding that evidence of improvement provided by the ALJ was sufficient when Plaintiff does not challenge the ALJ's reasoning); see also Red v. Colvin, No. 2:15-CV-0069-TOR, 2016 WL 335868, at *4 (E.D. Wash. Jan. 27, 2016) (same).  The Court therefore finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's testimony.  See Bowen v. Kijakazi, No. 21-35600, 2022 WL

---

[5] Generally, an AHI score of five or greater is considered mild sleep apnea, a score of fifteen or greater is considered moderate sleep apnea, and a score of thirty or greater is considered severe sleep apnea.  See Alisa Bowman, Understanding your apnea-hypopnea index (AHI), Mayo Clinic (March 12, 2026), https://mcpress.mayoclinic.org/sleep-apnea/understanding-your-apnea-hypopnea-index-ahi.  Here, Plaintiff has an AHI score of 3.1, which is below the threshold for mild sleep apnea. (See AR at 54–55 (ME testifying Plaintiff's CPAP score of 3.1 is within a good range).)

2610242, at *1 (9th Cir. July 8, 2022) (concluding that the ALJ properly discounted a claimant's testimony about her limitations and symptoms where the claimant told her medical care providers that she was "[d]oing extremely well" and had "no complaints" after her treatment); Joshua J. v. Bisignano, Case No. 24cv1978-LR, 2025 WL 2431800, at *11 (S.D. Cal. Aug. 22, 2025) (finding that the ALJ reasonably cited records that treatment controlled the claimant's symptoms to discount his testimony).

### b. Daily activities

The ALJ also discounted Plaintiff's subjective symptom testimony because his "allegations of significant limitations are not borne in his description of his daily activities." (AR at 103.) Specifically, the ALJ stated that Plaintiff's "activities support his ability to perform work with the above residual functional capacity [and] . . . has been continuing his training, schoolwork, studies, and music, which helped him shift to positivity and improve his pastoral skills." (Id. at 102.)

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective symptoms. See 20 C.F.R. § 404.1529(c)(3)(i). An ALJ may discount a claimant's subjective symptom testimony on the following grounds: (1) the claimant's daily activities involved skills that contradict the claimant's other testimony, or (2) the claimant's daily activities meet the threshold for transferable work skills. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Defendant contends that the ALJ explained that Plaintiff's allegations were inconsistent with his daily activities. (J. Mot. at 20.) The Court is not persuaded by Defendant's argument. The ALJ failed to identify which allegations he rejected and offered only a single, conclusory statement that Plaintiff "has been continuing his training, schoolwork, studies, and music." (AR at 102.) Importantly, the ALJ did not cite any medical or other record evidence to support his analysis. Absent a meaningful analysis of how Plaintiff's activities contradicted his testimony, any attempt to interpret such a discussion would involve reasoning that was not included in the ALJ's decision itself, which the Court declines to do in this instance. See Bray v. Comm'r of Soc. Sec.

17

Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Because the ALJ did not provide specific reasons to discount Plaintiff's testimony regarding his activities of daily living, the Court finds that this is not a clear and convincing reason to discount Plaintiff's testimony. See Smith v. Kijakazi, 14 F.4th 1108, 1113 (9th Cir. 2021) ("to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion.").

However, the ALJ provided other reasons to discount Plaintiff's subjective urinary and sleep symptom testimony that are sufficient to sustain the ALJ's evaluation of Plaintiff's allegations. Specifically, the ALJ cited Plaintiff's improvement with treatment and inconsistencies with the medical evidence as reasons to discount the severity of Plaintiff's symptoms, which Plaintiff does not challenge. (AR at 100–02.) These reasons provide clear and convincing support for the ALJ's assessment of the severity of Plaintiff's symptoms and are sufficient to sustain the ALJ's overall evaluation of Plaintiff's allegations.

**c. Conclusion**

Substantial evidence in the record supported the ALJ's decision to discount Plaintiff's subjective symptom testimony. While the ALJ's reliance on daily activities does not provide a clear and convincing reason, the ALJ identified other independently sufficient grounds. Most notably, the ALJ cited Plaintiff's improvement with treatment and inconsistencies with the medical evidence, which provide specific, clear, and convincing grounds to discount his subjective urinary and sleep symptom testimony. Because those adequately supported reasons are sufficient to sustain the ALJ's evaluation of Plaintiff's allegations, the Court **RECOMMENDS** that the District Judge find that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

/ / /

**B.**     **The ALJ Properly Addressed Urinary Frequency in the RFC**

     **1. Parties' arguments**

Plaintiff argues that the ALJ failed to address his urinary frequency in the RFC determination.  (See J. Mot. at 3–6.)  Plaintiff contends that the record reflects urinary urgency every thirty to forty minutes and that he testified he must urinate every ten to fifteen minutes when drinking water.  (Id. at 4.)  He further argues that his frequency renders him off task more than fifteen percent of a normal workday.  (Id. at 5.)  Plaintiff asserts that the ALJ erred by omitting *any* discussion of the frequency of his symptoms and resulting off-task behavior.  (Id.)  He also contends that the limitation to "ready access to a bathroom" does not adequately account for frequent and lengthy restroom breaks, rendering the RFC unsupported by substantial evidence.  (Id. at 5–6 (citing Woods v. Comm'r Soc. Sec. Admin., No. 6:14-CV-01766-HZ, 2015 WL 8780538 (D. Or. Dec. 14, 2015).)

Defendant responds that the ALJ properly considered Plaintiff's urinary frequency and reasonably found his allegations inconsistent with the record.  (See id. at 6–11.)  Defendant argues that the ALJ provided clear and convincing reasons to discount Plaintiff's alleged symptoms.  (Id. at 7.)  Specifically, Defendant states that Plaintiff's condition improved with medication and was inconsistent with his reported daily activities.  (Id. at 7–8.)  Defendant further asserts that the ALJ reasonably accounted for Plaintiff's condition by limiting him to work with "easy access to the restroom."  (Id. at 8.)  Finally, Defendant contends that Plaintiff's assertion that he would be off task fifteen percent of the workday lacks medical evidence support and is insufficient to establish error in the RFC determination.  (Id. at 11.)

Plaintiff replies that the ALJ improperly substituted his own judgment for that of medical providers and failed to obtain additional medical opinion evidence.  (Id. at 11–12.)  Plaintiff argues that the "ready access to a bathroom" limitation does not account for a need for breaks every twenty minutes and that the ALJ cited no medical evidence showing that Plaintiff's incontinence had resolved.  (Id.)  Plaintiff further contends that

25cv894-CAB(LR)

the ALJ failed to address the time required for restroom use, including dressing and undressing, rendering the RFC unsupported by substantial evidence.  (Id. at 12.)

### 2.  Applicable law

RFC refers to what the claimant can do in a work setting, despite the claimant's mental or physical limitations caused by impairments or related symptoms.  20 C.F.R. § 404.1545(a)(1); see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (providing that an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.").  In assessing the claimant's RFC, the ALJ must consider all the claimant's medically determinable impairments, including nonsevere medically determinable impairments. 20 C.F.R. § 404.1545(e). "[A]n ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-9p, 1996 WL 374184, at *5).  Careful consideration must be given to "any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" Id.

The RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within physicians' reports). In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry is whether the

25cv894-CAB(LR)

medical evidence supports the ALJ's findings. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2009) (holding that the RFC assessment adequately captured restrictions when it was consistent with the concrete limitations in the medical opinions).

### 3. Analysis

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's frequent and lengthy trips to the bathroom in the RFC determination. (J. Mot. at 5.) Defendant responds that Plaintiff's claim he would be off task fifteen percent of the workday lacks support in the medical evidence, and that the ALJ reasonably accommodated Plaintiff's urinary incontinence by requiring ready access to a restroom. (Id. at 11.) The Court agrees with Defendant.

The ALJ found Plaintiff's urinary tract disorder with urinary incontinence to be a severe impairment which "significantly limit[s] the ability to perform basic work activities." (AR at 94.) An RFC determination may be deficient where the record contains medical evidence of frequent bathroom use and the ALJ fails to account for that limitation. Leonard v. Colvin, 633 F. App'x 362, 363–64 (9th Cir. 2015) (remanding because despite evidence of claimant's frequent bowel movements, the ALJ omitted language regarding use of the bathroom in the RFC determination). However, courts have upheld RFC determinations where the claimant identifies no medical opinion supporting a need for frequent bathroom breaks. Donna A. v. O'Malley, No. CV 23-00606-MEMF (DFM), 2025 WL 1023726, at *7 (C.D. Cal. Jan. 22, 2025) (upholding RFC determination where, aside from plaintiff's subjective symptom testimony and treatment notes, no medical provider opined that she required restroom access); Digiacomo v. Saul, No. 1:19-CV-00494-BAM, 2020 WL 6318207, at *6 (E.D. Cal. Oct. 28, 2020) (upholding RFC determination when no medical opinions required plaintiff's access to restroom).

Here, the ALJ determined that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and accounted for Plaintiff's urinary limitations by requiring "easy access to a restroom." (AR at 99.) In reaching this determination, the ALJ

acknowledged Plaintiff's testimony that urinary incontinence was his primary barrier to working and that he needed to use the restroom frequently.  (Id. at 100.)  As discussed in Section A.3, the ALJ nevertheless found that, although Plaintiff's treatment history and symptoms supported some limitations—including the need for restroom access—they did not support the greater degree of limitation Plaintiff alleged.  (Id. at 101.)  Specifically, the ALJ cited that Plaintiff's "urinary symptoms were better controlled with both Mirabegron and Darifenacin."  (Id. (citing id. at 572).)  Plaintiff argues that his need to use the restroom every ten to fifteen minutes would render him off task for more than fifteen percent of the workday.  (J. Mot. at 5.)  In support, Plaintiff relies on Woods v. Comm'r Soc. Sec. Admin., No. 6:14-CV-01766-HZ, 2015 WL 8780538, at *4 (D. Or. Dec. 14, 2015), but that reliance is misplaced.  (See J. Mot. at 5.)   In Woods, the ALJ credited the claimant's testimony that he required restroom breaks every twenty minutes, yet the court found that the ALJ failed to incorporate that frequency into the RFC determination or present it to the VE.  Id. at 3–4.  By contrast, the ALJ here did not credit Plaintiff's asserted degree of limitation.  (AR at 100–01.)  Instead, the ALJ reasonably discounted Plaintiff's testimony regarding the severity of his symptoms, while still accounting for his impairment by including a limitation for ready restroom access.  (Id.)  The ALJ also presented a hypothetical to the VE addressing an individual who would be off task for fifteen percent or more of the workday due to frequent restroom use, and the VE testified that such a limitation would preclude that theoretical individual from sustained employment.  (Id. at 67.)  Thus, the ALJ considered the asserted limitation but, unlike in Woods, did not adopt it.  This approach is consistent with other decisions within the Ninth Circuit holding that a limitation to restroom access adequately accounts for urinary incontinence where the ALJ reasonably discounts more severe alleged limitations.  See, e.g., Cynthia S. v. Kijakazi, No. 3:20-CV-01044-SB, 2022 WL 485284, at *5 (D. Or. Feb. 17, 2022) (finding that the ALJ accounted for claimant's urinary incontinence in the RFC by limiting her to tasks within close proximity to the bathroom); Rose v. Berryhill, No. 3:15-CV-02226-MC, 2017 WL 3917173, at *2–6 (D. Or. Sept. 7,

2017) (finding that the ALJ reasonably determined that claimant's "incontinence was not severe as alleged" and reasonably accounted for the limitation in the RFC through access to the bathroom);  Robyn v. Comm'r of Soc. Sec., No. CIV S-11-0538-CMK, 2012 WL 4468485, at *5 (E.D. Cal. Sept. 26, 2012) (finding that the ALJ accounted for claimant's limitation by providing a need for Plaintiff to be in close proximity to the bathroom in the RFC).  Accordingly, the ALJ properly accounted for Plaintiff's urinary incontinence in the RFC by limiting him to light work with easy access to a restroom.

Additionally, in assessing Plaintiff's RFC, the ALJ carefully considered the medical opinions of Dr. A. Reid and Dr. Stuart Laiken, whose findings Plaintiff does not challenge.  Both physicians concluded that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following: he can do occasional climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; frequently handle, finger and feel bilaterally; and he must avoid concentrated exposure to hazards.

(AR at 72, 84, 103.)  The ALJ found these opinions mostly persuasive and assessed a more conservative RFC, consistent with the VE's testimony opinion, by limiting Plaintiff to no climbing of ladders, ropes, or scaffolds and requiring easy access to a restroom. (Id. at 64, 99, 103.)  Notably, only Dr. Laiken opined that a restroom "should be available," and both physicians otherwise endorsed greater functional capacity, including some climbing and balancing.  (Id. at 84.)  Thus, the ALJ assessed an RFC more favorable to Plaintiff than the medical opinions and remained consistent with the VE. See Hopper v. Colvin, No. 6:13-CV-01525-HZ, 2014 WL 6473566, at *4 (D. Or. Nov. 14, 2014) (finding that the ALJ did not err when he provided a more favorable RFC to Plaintiff than opined by medical opinions).  Courts have regularly concluded that RFC determinations that deviate slightly from specific medical findings regarding the claimant's limitations, or synthesize findings from the record, can be supported by substantial evidence.  See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1005–06

23

(9th Cir. 2015) (providing that an ALJ's RFC determination may deviate slightly from a medical provider's treatment recommendation); Blake R. v. Kijakazi, Case No.: 3:20-cv-01759-AHG, 2022 WL 4553125, at *7 (S.D. Cal. Sept. 29, 2022) (citing SSR 96-6p, 1996 WL 374180, at *1 n.1; 20 C.F.R. §§ 404.1502, 404.1513a, 404.1520c) (stating that "an ALJ can rely on the opinions of non-treating state agency consulting physicians to support an RFC determination"; also noting that such reliance was appropriate even where the ALJ's assessed "RFC was more restrictive than the state agency consulting physicians' opinion"); Wasson v. Kijakazi, Case No. 2:22-cv-00484-NJK, 2022 WL 14577078, at *5 (D. Nev. Oct. 25, 2022) (finding that because "the ALJ adopted many of the recommendations contained in the medical opinion evidence," the ALJ's assessed RFC did not have to "specifically match a physician's recommended limitations"); Donna M. v. Saul, Case No. ED CV 18-2554-SP, 2020 WL 1550212, at *5 (C.D. Cal. Mar. 31, 2020) ("An ALJ must consider opinions from medical sources, but is not required to adopt verbatim a medical opinion because the RFC determination is ultimately reserved to the Commissioner."); Valenna v. Colvin, NO. C15-1498-RAJ-JPD, 2016 WL 4367600, at *6 (W.D. Wash. June 15, 2016) (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)) ("[a]n RFC finding need not directly correspond to a specific medical opinion."), report and recommendation adopted, 2016 WL 4263047 (W.D. Wash. Aug. 12, 2016).  The ALJ's assessed RFC in this case aligned with the limitations assessed by the state agency medical consultants because it limited Plaintiff to light work and adopted additional *more restrictive* limitations.  (AR at 99–103.)

Accordingly, on the record before the Court relating to Plaintiff's limitations, the Court concludes that the ALJ's assessed RFC was supported by substantial evidence. The ALJ therefore did not err in this aspect of his decision.

### 4. Conclusion

In assessing Plaintiff's RFC, the ALJ properly considered and discounted Plaintiff's testimony and medical opinion evidence.  The ALJ weighed the relevant evidence in the record and determined a more restrictive RFC was warranted, limiting

25cv894-CAB(LR)

Plaintiff to light work with accommodation for easy access to the restroom.  Accordingly, the Court **RECOMMENDS** that the District Judge find that the ALJ's assessed RFC was supported by substantial evidence.

**C.     The ALJ Properly Addressed Plaintiff's PTSD in Accordance with 20 C.F.R. § 404.1520a**

### 1. Parties' arguments

Plaintiff argues that the ALJ failed to address his PTSD in accordance with 20 C.F.R. § 404.1520a and SSR 85-15,16.  (J. Mot. at 13–14.)  He contends that SSR 85-16 requires the ALJ to assess mental limitations in the RFC, including the ability to sustain activities, maintain interests, and relate to others over time.  (Id. at 13.)  Plaintiff challenges the ALJ's finding that he did not receive PTSD treatment through the VA and asserts that the ALJ failed to provide sufficient reasons to discount his reported symptoms.  (Id.)  Plaintiff asserts that the ALJ left unresolved inconsistencies between the VA's determinations, his own statements, and the ALJ's findings, and therefore failed to properly evaluate his PTSD.  (Id.)  Thus, the ALJ failed to address PTSD in the RFC as required by SSR 85-16.  (Id. at 14, 17.)

Defendant responds that the ALJ properly evaluated Plaintiff's PTSD under the applicable regulations.  (Id.)  Defendant explains that the ALJ applied the required psychiatric review technique by determining whether Plaintiff had a medically determinable impairment and, if so, rating the degree of limitation in the relevant functional areas.  (Id. at 15 (citing 20 C.F.R. § 404.1520a).)  Defendant contends that the ALJ reasonably found Plaintiff's PTSD non-severe after assessing no limitation in understanding and only mild limitations in interacting with others, concentrating, and managing oneself.  (Id. at 15–16.)  Thus, the ALJ reasonably found Plaintiff's PTSD to be a mild limitation and was therefore non-severe.  (Id.)

### 2. Applicable law

At step two of the sequential evaluation process, the Social Security Administration considers the medical severity of the claimant's impairment.  20 C.F.R. §

25cv894-CAB(LR)

404.1520(a)(4)(ii).  To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(b).

The ALJ is required to "follow a special technique" at step two in evaluating the severity of the claimant's mental impairment.  20 C.F.R. § 404.1520a(a).  First, the ALJ assesses the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether a medically determinable mental impairment is present.  20 C.F.R. § 404.1520a(b)(1).  Second, if the claimant has a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" for four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(b)(2), (c)(3).  These four functional areas are known as the "Paragraph B criteria" due to how they are categorized in the listings. See 20 C.F.R. Part 404, Subpart P, Appendix 1.

The degree of limitation for each of these categories are rated on the following scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  If the degrees of limitation are rated as "none" or "mild," the ALJ typically concludes that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).  The ALJ's written decision must incorporate the pertinent findings and conclusions, and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."  20 C.F.R. § 404.1520a(e)(4).

25cv894-CAB(LR)

The inquiry at step two of the sequential evaluation process is a "de minimis screening device" to screen for groundless claims. Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). The ALJ must consider the "combined effect of all the claimant's impairments" on the claimant's ability to function "without regard to whether each [impairment] alone was sufficiently severe." Id.  For purposes of step two of the sequential evaluation process, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original).

### 3.  Analysis

The ALJ stated in his written decision that Plaintiff's medically determinable mental impairments, including PTSD, do not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore non-severe under the regulatory analysis.  (AR at 96.)  The ALJ then stated that in making this finding, he had "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments," also known as "Paragraph B" criteria.  (Id.)

With respect to the first functional area of understanding, remembering or applying information, the ALJ found that Plaintiff had no limitation.  (Id.)  The ALJ noted that Plaintiff has not alleged problems with memory, understanding, or following instructions.  (Id. (citing id. at 306).)  The ALJ further found no evidence that Plaintiff was seriously limited in his ability to learn, recall, or use information on a sustained basis.  (Id. at 96.)  The ALJ also noted that treating and consulting sources reflect intact memory and no cognitive defects.  (Id.)  The ALJ cited Dr. Obrecht's psychometric testing, which showed Plaintiff's "memory functioning was in the high average in visual memory and in the average range in auditory memory, visual working memory and immediate memory."  (Id. (citing id. at 818–19).)

25cv894-CAB(LR)

Next, the ALJ found that Plaintiff had a mild limitation in interacting with others. (Id. at 97.)  The ALJ noted that Plaintiff did not allege problems getting along with others and that the record contained no evidence of serious limitations in relating to supervisors, co-workers, or the public.  (Id. (citing id. at 306).)  Although Plaintiff reported being less social, the ALJ found this supported only a mild limitation.  (Id. at 97 (citing id. at 305).)  The ALJ noted that Plaintiff reported getting along with family, friends, neighbors, and others.  (Id.)  The ALJ further noted that Dr. Obrecht's report found that Plaintiff "demonstrated average insight and judgment."  (Id. at 97 (citing id. at 818).)

Further, the ALJ found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace.  (Id. at 97.)  The ALJ stated that Plaintiff reported that he had problems with concentration.  (Id. (citing id. at 306).)  While Plaintiff reported difficulty concentrating, the ALJ found no evidence that his ability to focus or remain on task was significantly impaired.  (Id. at 97.)  The ALJ cited Dr. Obrecht's report that Plaintiff "was able to perform serial 7s, count backwards from 20 to 1, and spell 'music' forwards and backwards."  (Id. (citing id. at 818).)

Finally, the ALJ found that Plaintiff had a mild limitation in the functional area of adapting or managing oneself.  (Id. at 97.)  The ALJ noted that Plaintiff reported generally handling stress adequately, despite experiencing anxiety and depression related to work stress.  (Id. (citing id. at 307).)  The ALJ referenced Dr. Obrecht's report stating that Plaintiff had only mild limitations in carrying out activities of daily living.  (Id. at 97 (citing id. at 820).)  In addition, the ALJ found it significant that Plaintiff testified he would continue working as a chaplain if transferred to San Diego and that his continued engagement in training, schoolwork, studies, and music demonstrated an ability to adapt and manage himself.  (Id. at 97.)

The ALJ concluded that because Plaintiff's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas, and the evidence did not otherwise indicate that there was more than a minimal limitation in

25cv894-CAB(LR)

Plaintiff's ability to do basic work activities, his mental impairment was "nonsevere." (Id. at 97–98 (citing 20 C.F.R. § 404.1520a(d)(1)).)

Plaintiff argues that the ALJ failed to address PTSD in accordance with 20 C.F.R. § 404.1520a, but does not specifically challenge the ALJ's "special technique" analysis as required by the statute.  (See J. Mot. at 13–14.)  As discussed above, the Court agrees with Defendant that the ALJ met the required criteria in determining that Plaintiff's mental impairments were "nonsevere."  See 20 C.F.R. § 404.1520a.

Additionally, Plaintiff argues that the ALJ failed to address his non-severe mental limitations in the RFC.  (J. Mot. at 13, 17 (citing SSR 85-16, 1985 WL 56855 (Jan. 1, 1985)).)[6]  The Social Security Regulations require an ALJ to consider all limitations, whether severe or non-severe, when assessing a claimant's RFC.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").  An ALJ errs, therefore, if he *explicitly* neglects to consider a non-severe limitation when assessing the RFC.  See

---

[6] SSR 85-16 provides:

> An individual whose impairment(s) meets, or is medically equivalent to, the requirements of an impairment(s) contained in the Listing of Impairments is considered unable to function adequately in work-related activities. On the other hand, an individual whose impairment is found to be not severe is considered not to be significantly restricted in the ability to engage in basic work-related activities. An individual whose impairment(s) falls between these two levels has a significant restriction in the ability to engage in some basic work-related activities. It is, therefore, necessary to determine the RFC for these individuals. This policy statement provides guides for the determination of RFC for individuals whose mental impairment(s) does not meet or equal the listing, but is *more* than not severe.

SSR 85-16, 1985 WL 56855 at *1.  Here, as discussed above, the ALJ properly found that the Plaintiff's mental limitations, including PTSD, are non-severe.  Contrary to Plaintiff's argument, SSR 85-16 provides guidelines for the determination of the RFC for individuals whose mental impairment(s) does not meet or equal the listing, but is *more* than non-severe.  Id.  The Court finds that because the ALJ's step two and three analysis was proper in finding Plaintiff's mental limitations non-severe, SSR 85-16 does not specifically require the ALJ to include them in the RFC.  Despite Plaintiff not citing to any other authority to support his argument, the Court nevertheless discusses Plaintiff's argument that the ALJ failed to address his PTSD in the RFC under the applicable standards.

25cv894-CAB(LR)

Hutton v. Astrue, 491 F. App'x 850, 850–51 (9th Cir. 2012) (holding that although the ALJ found that claimant's impairment of PTSD was non-severe because it caused only "mild mental limitations in the area of concentration, persistence or pace, and no episodes of decompensation," the ALJ still was required to consider the mild limitations in the RFC analysis); Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (distinguishing Hutton because it was based on the ALJ's "explicit refusal" to consider the claimant's mild mental limitations caused by PTSD in the RFC).  However, while an ALJ must consider non-severe limitations, an ALJ need not include them in the RFC if they do not cause more than a minimal limitation on a claimant's ability to work.  See Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("Consideration of 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."); Ball, 2015 WL 2345652, at *3 (reasoning that mild mental impairments "by definition do not have more than a minimal limitation on Plaintiff's ability to do basic work activities . . . which translates in most cases into no functional limitations," and thus the ALJ was not required to include them in the RFC).

Here, the ALJ evaluated Plaintiff's mental impairments, including PTSD, at step two and found them non-severe after reviewing the medical evidence.  (AR at 96–99.)  In applying the paragraph B criteria, the ALJ found a mild limitation in interacting with others; concentrating, persisting, or maintaining pace; and managing oneself.  (Id. at 97.)  He found no limitation in understanding, remembering, or applying information.  (Id. at 96.)  The ALJ then acknowledged that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of

25cv894-CAB(LR)

limitation the undersigned has found in the "paragraph B" mental function analysis.

(Id. at 98.)  Some courts within the Ninth Circuit have concluded that similar boiler-plate language, standing alone, does not demonstrate that an ALJ adequately considered non-severe limitations in the RFC.  See Victor R. v. O'Malley, No. 3:23-CV-00501-GPC-BGS, 2024 WL 392616, at *4 (S.D. Cal. Feb. 1, 2024) (finding that the ALJ failed to discuss or reference the non-severe mental impairment in the RFC section of his opinion); David Allan G. v. Comm'r of Soc. Sec., No. 1:21-CV-00162-DKG, 2023 WL 2479921, at *4 (D. Idaho Mar. 10, 2023) ("Ultimately, aside from a brief, boilerplate indication that 'any impairment, symptom, or condition not addressed above has not affected the claimant's residual functional capacity,' the ALJ's opinion does not include any discussion or analysis of how Plaintiff's non-severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any nonexertional limitations."); Barrera v. Berryhill, No. CV 17-07096-JEM, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018) (reversing the ALJ's decision that "did not say [the ALJ] had considered mild limitations or nonsevere impairments, offering only boilerplate language that she had considered 'all symptoms.'"); see Michele M. v. Saul, No. 19-cv-00272-JLB, 2020 WL 1450442, at * 8 (S.D. Cal. Mar. 25, 2020) (holding that the statement that "the following residual capacity assessment reflects the degree of limitation I have found in the paragraph B mental functioning analysis" in the step two analysis section of the decision failed to conclusively indicate that the ALJ had considered the non-severe mental impairments when determining the RFC).

Unlike Hutton, the decision in this case shows that the ALJ did not *explicitly* disregard Plaintiff's PTSD.  Rather, the ALJ reviewed the full record (including medical evidence, opinion evidence, Plaintiff's statements, and hearing testimony) and explained his findings in assessing the RFC.  After addressing the paragraph B criteria, the ALJ

evaluated the medical opinion evidence concerning Plaintiff's mental limitations, which Plaintiff does not challenge.  (AR at 97–99.)  The ALJ discussed the testimony of medical expert Dr. Linda Miller, whom he specifically questioned about Plaintiff's medical impairments.  (Id. at 54–56, 98.)  Although Dr. Miller acknowledged references to PTSD in the treatment notes, she opined that Plaintiff did not have a medically determinable mental impairment because he was not formally diagnosed.  (Id. at 55–56.)  The ALJ found this opinion unpersuasive because there was still evidence of a mild mental impairment.  (Id. at 98.)  The exchange between the medical expert and the ALJ reflects that the ALJ actively considered Plaintiff's PTSD in evaluating Plaintiff's RFC.  See Delia v. Saul, No. 1:18-CV-00314-CWD, 2019 WL 4601834, at *9 (D. Idaho Sept. 23, 2019) (holding that any error in failing to explicitly address mental impairments in the RFC was harmless where the record showed the ALJ considered those impairments in assessing the RFC, as reflected by his questioning of the medical and vocational experts at the hearing).

The ALJ also considered the opinions of Dr. Jennifer Duffy, Dr. R. Paxton, and Dr. Robert Obrecht, who all considered Plaintiff's PTSD and found Plaintiff's mild mental limitations non-severe.  (AR at 96–97 (citing id. at 70–77, 79–86, 816–24).)  The ALJ found the medical opinions consistent with Plaintiff's "ability to actually work as a chaplain for the VA even with his mental symptoms."  (Id. at 98–99.)  The ALJ further stated that he "considered all of the [Plaintiff's] medically determinable impairments including those that are not severe, when assessing [Plaintiff's] residual functional capacity."  (Id. at 99.)

The decision also reflects the consideration of Plaintiff's mental impairments in the RFC analysis itself.  The ALJ noted that "there is no evidence of cognitive deficits due to pain or depression."  (Id. at 102.)  The ALJ further incorporated Plaintiff's non-severe mental limitations by reference, stating that "the opinions and prior administrative findings regarding the claimant's mental health issues are discussed above and apply here, unchanged, as well."  (Id. 103.)  Courts have found that an ALJ adequately

25cv894-CAB(LR)

considers non-severe mental impairments where the decision includes a detailed discussion of those impairments and incorporates them into the RFC discussion.  See, e.g., D.L.P. v. Kijakazi, No. 21-CV-00792-VKD, 2022 WL 4472064, at *4 (N.D. Cal. Sept. 26, 2022) (holding that the ALJ incorporated his step two analysis into the RFC and therefore properly considered plaintiff's mental limitations); Virginia Estelle G. v. Comm'r of Soc. Sec., No. 21-cv-00674-W-KSC, 2022 WL 1404218, at *9-10 (S.D. Cal. May 4, 2022) (concluding that the ALJ properly incorporated the step two analysis into the RFC analysis by reference, where the ALJ's psychiatric review technique included specific findings as to plaintiff's degree of limitation in each functional area, as well as a discussion of the medical evidence and opinions relating to plaintiff's mental impairments); Frary v. Comm'r of Soc. Sec., No. 1:20-cv-00260-SAB, 2021 WL 5401495, at *19 (E.D. Cal. Nov. 18, 2021) (concluding that the ALJ's "reasoned further discussion in conjunction with the express incorporation of the step two findings within the RFC, distinguishes this from other cases finding error, and the Court finds this was not a hollow boilerplate incorporation of the paragraph B criteria within the RFC."); Jones v. Berryhill, No. EDCV 17-1138-AS, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018) (concluding that although the ALJ did not include any mental limitations in plaintiff's RFC, he properly considered at step two the overall record evidence and the functional limitations resulting from plaintiff's impairments, including those that are not severe); Webb v. Colvin, No. 2:12-cv-00592-GMN-PAL, 2013 WL 5947771, at *12 (D. Nev. Nov. 5, 2013) ("Although the ALJ did not extensively discuss Plaintiff's mental impairments at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis . . . The Court finds the ALJ considered Plaintiff's mild mental limitations in his RFC analysis.").  Accordingly, similar to the cases cited above, the ALJ adequately considered Plaintiff's non-severe mental impairments, including PTSD, in assessing the RFC, and Plaintiff has not shown error.

25cv894-CAB(LR)

Plaintiff also summarily argues that the ALJ "has left unresolved the conflict between the VA determination, [Plaintiff's] statements and the ALJ's findings" and that "the VA finds mental limitations supporting disability from PTSD." (J. Mot. at 14, 17.) "'[D]ecisions by other governmental agencies,' including the VA, are 'inherently neither valuable [n]or persuasive,' and thus, an ALJ is not required to include *any* analysis about 'a decision made by any other governmental agency.'" Kitchen v. Kijakazi, 82 F.4th 732, 738 (9th Cir. 2023) (quoting 20 C.F.R. §§ 404.1504, 404.1520b(c)(1)). Although not required to do so, the ALJ acknowledged that "the VA assigned a combined disability rating of 100 percent, which included a finding that his service connected PTSD was 30 percent disabling." (AR at 103.) The ALJ also correctly noted that disability decisions of government agencies are not binding on the Social Security Administration. (Id. at 103–04 (citing 20 C.F.R. § 404.1504).) The ALJ found the VA determination unpersuasive because the Social Security Administration requires objective medical evidence of a severe impairment, whereas the VA may base its determinations on non-severe conditions and different standards. (AR at 104.) Therefore, the Court finds that the ALJ properly discounted the VA determination. See Turayl P. A. v. O'Malley, No. 3:23-CV-1589-WQH-DTF, 2024 WL 3103318, at *3 (S.D. Cal. June 24, 2024) (finding that "it was not error for the ALJ to exclude Plaintiff's VA disability rating from their analysis").

The Court notes that even if the ALJ erred by failing to discuss Plaintiff's PTSD in the RFC assessment, the error is harmless. An error is harmless if it is inconsequential to the ALJ's ultimate non-disability determination. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1007 (9th Cir. 2015). The regulations require the ALJ to *consider* the effect of Plaintiff's impairments while formulating the RFC, but they do not require him to *include* them in the final RFC. Medlock, 2016 WL 6137399, at *5. As discussed above, the ALJ considered mental impairment in other sections of his decision and heard testimony from the medical expert regarding Plaintiff's PTSD. Therefore, even if the ALJ erred by failing to discuss Plaintiff's PTSD in the RFC determination, he was not

34

25cv894-CAB(LR)

required to include the mental impairments in his final RFC assessment.  Thus, it was inconsequential to the ultimate non-disability determination. See Delia, 2019 WL 4601834, at *9  (holding that despite the ALJ failing to discuss plaintiff's mental impairments in the RFC, the error was harmless because he considered the impairments in other sections of the decision).

### 4. Conclusion

For these reasons, the ALJ properly evaluated Plaintiff's mental impairments, including PTSD, at step two and adequately considered them when assessing the RFC. See 20 C.F.R § 404.1520a.  The ALJ applied the paragraph B criteria, reviewed the medical evidence and opinion testimony, and incorporated his mental health findings into the RFC analysis by reference.  Substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were non-severe and caused no more than minimal work-related limitations.  Even assuming the ALJ did not expressly discuss Plaintiff's mental limitations in the RFC section, any error was harmless.  The ALJ was not required to include non-severe limitations in the final RFC determination and considered Plaintiff's PTSD elsewhere in the decision.  Accordingly, the Court **RECOMMENDS** that the District Judge find that the ALJ properly addressed Plaintiff's PTSD.

## VII.   CONCLUSION & RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** consistent with this **Report and Recommendation**.

Additionally, **IT IS ORDERED** that no later than **July 10, 2026**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document shall be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

35

25cv894-CAB(LR)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 17, 2026**.  The parties are advised that failure to file objections within the specified time may waive the right to raise these objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**

Dated:  June 26, 2026

_____

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

36

25cv894-CAB(LR)